### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTINA L. AHEARN, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | *Docket No. 06-94-B-W* |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, [1] | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD"), Supplemental Security Income ("SSI") and Child's (Disability) Insurance Benefits ("CDB") appeal raises the issue whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from depression, sleep problems, fatigue and borderline personality disorder, is capable of making an adjustment to work existing in significant numbers in the national economy.  I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted new Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on March 22, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

administrative law judge found, in relevant part, that the plaintiff suffered from depression, an impairment that was severe but did not meet or equal any listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 3-4, Record at 29; that she retained the residual functional capacity ("RFC") to perform the physical demands required at all exertional levels of work, but her impairments resulted in nonexertional limitations as described in the body of the decision, Finding 7, *id.*; that, considering her RFC and vocational factors, there were jobs existing in significant numbers in the national economy that she could perform, Finding 11, *id.*; and that she therefore had not been under a disability at any time through the date of decision, Finding 12, *id.*[3] The Appeals Council declined to review the decision, *id.* at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the

---

[3] Inasmuch as the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through March 31, 2005, *see* Finding 1, Record at 29, less than eight months prior to the date of decision, *see id.* at 30, the administrative law judge did not undertake a separate SSD analysis.

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff complains that the administrative law judge (i) presented a flawed hypothetical question to the vocational expert, (ii) failed to assess whether her obesity constituted a severe impairment, and (iii) omitted to evaluate and consider state Bureau of Rehabilitation disability findings. *See generally* Statement of Errors (Docket No. 6). I find no reversible error.

## I. Discussion

### A. Hypothetical Question

At hearing, the administrative law judge asked the vocational expert whether a younger individual with a limited education, no transferable skills and no physical restrictions, who was capable of performing work with an SVP, or specific vocational preparation, of 2 or less and who could have no contact with the public and occasional contact with supervisors and co-workers, could perform bench work. *See* Record at 503. The vocational expert testified that such a person could perform the job of Cleaner II, corresponding to section 919.687-014 of the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"). *See id.*

The plaintiff posits that (i) the administrative law judge failed to explain to the vocational expert what he meant by the restriction to an SVP of 2 or less, which in the plaintiff's view is reversible error, (ii) in any event, the derivation of the SVP limitation is not clear from the Record, and (iii) the administrative law judge provided no rationale for ignoring a limitation to performance of routine or simple tasks found by several Disability Determination Services ("DDS") examining and non-examining consultants. *See* Statement of Errors at 1-3. For reasons discussed below, the first two points are without merit. I agree that the administrative law judge erred in failing to articulate reasons

3

for rejection of a limitation to routine and/or simple tasks; however, in the circumstances presented, the error is harmless.

The administrative law judge did not need to explain the meaning of a restriction to an SVP of 2 to the vocational expert, who assuredly would have been familiar with the DOT definition. The DOT defines "specific vocational preparation" as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appendix C, § II to DOT. SVP levels range from 1 (short demonstration only) to 9 (over ten years). *See id.* A Level 2 SVP is "[a]nything beyond short demonstration up to and including 1 month[.]" *Id.* SVP Levels 1 and 2 correspond to unskilled work. *See* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006) ("SSR 00-4p"), at 245 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

The derivation of the restriction to an SVP of 2, likewise, is clear enough: The plaintiff, who had only an eighth-grade education, had never engaged in substantial gainful activity and had no transferable skills, was limited to performance of unskilled work. *See* Record at 25, 486, 503.

As the plaintiff points out, "unskilled" work does not necessarily mean "simple" work. *See* Statement of Errors at 1-2; *Hall-Grover v. Barnhart*, No. 03-239-P-C, 2004 WL 1529283, at *4 (Apr. 30, 2004) (rec. dec., *aff'd* May 24, 2004) ("SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [General Educational Development] ratings."). Thus, in adjudging the plaintiff limited to performance of jobs with an SVP of 2 or less, the administrative law judge cannot fairly be said to have found her restricted to performance of simple or routine work. Yet,

as the plaintiff underscores, there is some evidence that she was restricted to performance of such work. *See* Statement of Errors at 2-3; Record at 331 (report of consulting examiner Robert Kahl, Ph.D., dated August 14, 2001, stating, *inter alia*, that plaintiff's "ability to understand, remember and carry out one- or two-step drive instructions is essentially estimated to be unimpaired though I suspect when she gets somewhat temper-ridden and overwhelmed with her borderline symptomatology, the carrying out instructions might be as much as severely impaired. Her ability to maintain effort at simple repetitive task[s] over a short run is assessed to be unimpaired for the same kind of reasons and over the long one severely impaired for exactly the same kind of reasoning."); 350 (mental RFC opinion of Peter G. Allen, Ph.D., dated September 9, 2001, stating, *inter alia*: "She would likely find complex job demands difficult but is quite capable of performing routine tasks for two-hour blocks of time & for full[-]time employment.").

Nonetheless, a second DDS consulting examiner, Mary Alyce Burkhart, Ph.D., did not find the plaintiff to suffer from such restrictions upon examining her in 2003, and two DDS non-examining consultants thereafter deemed the plaintiff's mental impairments non-severe, as a result of which they found no restrictions emanating from them. *See id*. at 356 (report of Dr. Burkhart dated October 30, 2003, stating, *inter alia*, that plaintiff "has the intellectual capacity to do work-related activities. . . . Her understanding does not appear impaired. She appears capable of sustaining her concentration and persisting at a task. [The plaintiff] reported problems with feeling sad and managing her anger[;] these likely impact her ability to interact with others."), 358-71 (Psychiatric Review Technique Form ("PRTF") dated November 3, 2003 by David R. Houston, Ph.D., assessing plaintiff's affective disorder as non-severe), 384-97 (PRTF by Brenda Sawyer, Ph.D., covering period through December 31, 2003 assessing plaintiff's affective disorder as non-severe).[4]

---

[4] The plaintiff construes Dr. Burkhart, as well, to have found her limited to "simple directions." *See* Statement of Errors at 3. Dr. *(continued on next page)*

The administrative law judge supportably found, as a general matter, that the evidence – including the contrast between the 2001 Kahl and the 2003 Burkhart findings and the plaintiff's lack of treatment for her psychological conditions after 2001 – indicated that her condition was not as severe as claimed. *See id.* at 25-26; *see also id.* at 492 (testimony of plaintiff acknowledging she had sought therapy only once since she had moved out of her mother's house at age 15). Unfortunately, he made no express finding concerning a possible limitation to simple and/or routine work. Nonetheless, a failure of articulation – while hardly to be emulated or encouraged – does not constitute reversible error when, as here, the court nonetheless readily can discern substantial support for the administrative law judge's findings in the Record. *See, e.g., Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998) ("We have often held that [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably ha[s] no practical effect on the outcome of the case.") (citations and internal quotation marks omitted). The Burkhart report, the Houston and Sawyer PRTF findings and the plaintiff's lack of treatment after 2001 serve, collectively, as substantial evidence that she was not restricted to carrying out simple one- and two-step instructions. Accordingly, there is no reversible error.[5]

---

Burkhart did note, under the heading "Mental Status Examination," that the plaintiff "was able to attend to and [carry out] simple directions. Her concentration did not appear impaired." *See* Record at 354. However, Dr. Burkhart did not state, either in the "Mental Status Examination" section or in her summary "Medical Source Statement" at the end of her report, that the plaintiff was limited to carrying out simple directions. *See id.* at 354, 356.

[5] The plaintiff also complains that the administrative law judge ignored the distinction between a personality disorder (found by Dr. Kahl) and a mood disorder (found by Dr. Burkhart). *See* Statement of Errors at 3-4. At oral argument, her attorney posited that there can be no dramatic improvement in patients with personality disorder, which by definition entails an ingrained body of traits and is not subject to remission. Even assuming *arguendo* that the plaintiff's attorney's description of personality disorder is accurate, it does not help his client. The administrative law judge implicitly determined that the plaintiff did not suffer from personality disorder when he found her afflicted only by depression. *See* Record at 16 & Finding 3, *id.* at 29. That finding, in turn, was supported by substantial evidence of record. While Dr. Kahl, a consulting examiner, gave a provisional and primary diagnosis of borderline personality disorder, *see* Record at 331, Dr. Burkhart, another consulting examiner, diagnosed the plaintiff as suffering from mood disorder, *see id.* at 355, and treating practitioners likewise assessed her as suffering from depression or mood disorder, *see, e.g., id.* at 188 (reflecting discharge diagnoses of major depression and dysthymia following 1996 inpatient hospitalization), 210 (reflecting treatment from 1997 to 1998 to reduce depression and anger), 372-73 (Family Medicine Institute progress note dated March 10, 2004 reflecting, *inter alia*, presence of mood disorder).

### B.  Obesity

The plaintiff next complains that the administrative law judge erred in neglecting to assess whether her obesity constituted a severe impairment.  *See* Statement of Errors at 4-5.  While it is clear from the Record, and counsel for the commissioner conceded at oral argument, that the plaintiff was obese, *see, e.g*., Record at 373, 381, and the administrative law judge therefore should have considered whether her obesity constituted a severe impairment, *see* Social Security Ruling 02-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006) ("SSR 02-1p"), at 253, his failure to do so just as clearly is harmless error.

Per SSR 02-1p, obesity is not *per se* a severe impairment.  *See id*. at 255 ("There is no specific level of weight or BMI [Body Mass Index] that equates with a 'severe' or a 'not severe' impairment.  Neither do descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes.").  The plaintiff points to no evidence that her obesity imposed limitations on her functioning; in fact, at hearing, she denied that it did.  *See* Record at 493.  Her attorney argues, instead, that "[i]t is facially unreasonable to suggest that such an obese individual would be able to perform the stooping, kneeling, crouching, and crawling necessary" to perform the Cleaner II job.  *See* Statement of Errors at 5.  Nonetheless, this is precisely the sort of one-size-fits-all assumption that SSR 02-1p forbids.  *See* SSR 02-1p at 253-55 ("The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments.  It means that they are at greater than average risk for developing the other impairments. . . .  As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with

another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.").[6]

In circumstances such as these, an administrative law judge's failure to consider whether a claimant's obesity is severe is harmless. *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 553 & n.5 (3d Cir. 2005) (declining to order remand on account of administrative law judge's failure to consider plaintiff's obesity when plaintiff "never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments" and no medical evidence indicated obesity contributed to any limitation); *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (declining to order remand on account of administrative law judge's failure to consider plaintiff's obesity when, "[a]lthough [the plaintiff's] treating doctors noted that [the plaintiff] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions"). Remand accordingly is unwarranted on this basis.

### C.  Vocational Rehabilitation Disability Finding

The plaintiff finally complains that the administrative law judge erred in failing to consider and accord at least "some weight" to a finding of disability by the Maine Department of Labor Bureau of Rehabilitation Services ("Bureau of Rehabilitation"). *See* Statement of Errors in 5-6; Record at 301-02, 307. In 2000, the plaintiff sought vocational-rehabilitation help from the Bureau of Rehabilitation. *See* Record at 301-06. She was found qualified for those services on the basis, *inter alia*, that she had "a physical or mental impairment which constitutes or results in a [] substantial

---

[6] Although the plaintiff does not point to it, there is some Record evidence from which one could infer that she suffered back pain as a result of her obesity. In 2004 she complained of back pain and was encouraged to lose weight. *See* Record at 375. Nonetheless, the condition was either not a medically determinable impairment and/or was mild. A DDS non-examining reviewer, Robert Hayes, D.O., noted that despite the back-pain complaint the plaintiff's gait and neurological findings were normal, and there was no evidence of significant back pathology. *See id.* at 405.

impediment to employment." *Id.* at 311.  She was assessed, *inter alia*, as exhibiting "feelings and emotional behavior which interfere with the . . . individual's performance in training or work settings[,]" *id.* at 307, having "recurring episodes during which personal assistance is required to start tasks, finish tasks, follow schedules, or decide on what to do next[,]" *id.* at 308, having "not acquired the work skills usually possessed by the average person of comparable age and education" and having "no transferable work skills which could readily be used on a job which exists locally, or an economy to which the individual is willing to relocate[,]" *id.* at 309, and being "unable to tolerate the common psychological stresses found in work[.]" *id.*

At hearing, the plaintiff's representative called the Bureau of Rehabilitation's disability finding to the administrative law judge's attention.  *See id.* at 499-500.  The representative was unable to answer a question concerning the qualifications of the individual who assessed the plaintiff as disabled for purposes of vocational rehabilitation; the administrative law judge then commented that the disability finding was "really unreliable."  *Id.* at 500.  He omitted even to mention the Bureau of Rehabilitation finding in his decision.  *See id.* at 24-30.

The plaintiff cites, *inter alia*, *Pinkham v. Barnhart*, 94 Soc. Sec. Rep. Serv. 318 (D. Me. 2004) (rec. dec., *aff'd* Apr. 5, 2004), for the proposition that the administrative law judge erred in overlooking the vocational disability finding.  *See* Statement of Errors at 6.  However, she overlooks a subsequent decision that is considerably more closely on point, *Laffely v. Barnhart*, No. 04-273-P-C, 2005 WL 1923515 (D. Me. Aug. 9, 2005) (rec. dec., *aff'd* Sept. 20, 2005).  In *Laffely*, this court rejected a claimant's argument that the administrative law judge had erred in failing to consider a Veterans Administration ("VA") vocational-rehabilitation decision, distinguishing *Pinkham* on the basis that it addressed VA disability ratings, not VA rehabilitation-training decisions.  *See Laffely*, 2005 WL 1923515, at *5.  The court observed that the vocational-rehabilitation decision in question

had little to no probative value in the Social Security context in view of the fact that its criteria for eligibility differed significantly from those employed in Social Security analysis. *See id.* Therefore, the court found, the administrative law judge committed no reversible error in ignoring it. *See id.* at *6.

That is the case here. An individual is eligible for Bureau of Rehabilitation services if he or she (i) has "a physical or mental impairment which constitutes or results in a [] substantial impediment to employment[,]" (ii) will benefit, in terms of employment outcome, from the services and (iii) requires the services to prepare for, enter, engage in or retain gainful employment. *See* Record at 311. "At Step 5 of an SSD [or SSI] determination, by contrast, the commissioner casts a much broader net, pondering whether a claimant retains the capacity to perform any work existing in significant numbers in the national economy in view of his or her RFC, age, education and work experience." *Laffely*, 2005 WL 1923515, at *6.

Beyond this, while the Bureau of Rehabilitation adjudicator did find certain specific functional restrictions in 2000, her qualifications are unknown, as observed by the administrative law judge at hearing, and the evidence of Record indicates that the plaintiff's condition improved subsequent to 2001 – circumstances that also undercut the weight of the decision.[7]

For all of the foregoing reasons, the administrative law judge committed no reversible error in ignoring the Bureau of Rehabilitation's disability finding.

---

[7] The plaintiff also cites 20 C.F.R. § 404.1504 (mistakenly cited as 20 C.F.R. § 1504) and *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998), in her bid for reversal and remand on the basis of the ignoring of the Bureau of Rehabilitation disability finding. *See* Statement of Errors at 6. Neither authority helps her. Section 404.1504 provides: "A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us." 20 C.F.R. § 404.1504; *see also id.* § 416.904 (same). *Morrison*, like *Pinkham*, concerned a VA disability finding. *See Morrison*, 146 F.3d at 628.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 27th day of March, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge